# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| MAGDALENA MACIAS, MARY STOKE, KATHLENE TOFT, PAULA ORR, GEORGE WATTS, DARREL NORRIS, SANDRA FRY, LEONARD CLARK, JOSH SMITH, and CAROLYN EDDLEMON, | ) ) ) ) ) | Case No: 3:20-CV-01491 |
| Plaintiffs, | ) ) ) ) | Removed from the 193rd Judicial District Court of Dallas County, Texas, Case No. DC-20-05388 |
| | ) ) ) | |
| vs. | ) ) | |
| C. R. BARD, INC., a foreign corporation; BARD PERIPHERAL VASCULAR, INC., an Arizona corporation; MCKESSON CORPORATION, a corporation; and DOES 1 THROUGH 100 INCLUSIVE, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED ON ALL COUNTS** |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants C. R. Bard, Inc. ("C. R. Bard") and Bard Peripheral Vascular, Inc. ("BPV") (C. R. Bard and BPV are collectively referred to herein as "the Bard Defendants" or "Bard"), remove this action from the 193rd Judicial District Court of Dallas County, Texas to the United States District Court for the Northern District of Texas, Dallas Division, based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(b), and Plaintiffs' improper joinder of Defendant McKesson Corporation ("McKesson Corp.") to avoid federal diversity jurisdiction.

As explained below, the United States District Court for the Northern District of Texas, Dallas Division, has original subject matter jurisdiction of this civil action—which combines the

product liability claims of 10 unrelated Plaintiffs—pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among all properly joined and served parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

In support of this removal, Bard respectfully shows this Court as follows:

## <u>INTRODUCTION</u>

1. As of the date of this Notice, Plaintiffs' counsel filed and served 49 separate multi-plaintiff products liability cases in Dallas County District Court against C. R. Bard (a NJ corporation and citizen), BPV (an AZ corporation and citizen), and McKesson Corp. (a DE and TX corporation and citizen) allegedly relating to Bard's Inferior Vena Cava ("IVC") filters. This is one of those cases.

2. These 49 cases were patently constructed in an improper attempt to circumvent federal diversity jurisdiction — each case has a single Texas plaintiff, and the remaining plaintiffs in each case are from various states throughout the country. Each case's lone Texas plaintiff was included to try to destroy diversity of citizenship as to McKesson Corp.[1] But, as explained below, McKesson Corp. is fraudulently joined; therefore, its citizenship should be disregarded for purposes of determining subject matter jurisdiction.

3. This action combines the claims of 10 unrelated Plaintiffs related to their alleged personal injuries arising from implantation of unspecified models of IVC filters that were manufactured, designed, and distributed by the Bard Defendants. *See* Petition at ¶¶ 13-14, 90. IVC filters are prescription medical devices designed to prevent potentially fatal blood clots from migrating from patients' hips and legs to their lungs and causing a potentially fatal event.

---

[1] Defendant McKesson Corp. is a Delaware Corporation with its principal place of business in Texas. Thus, McKesson Corp. is a citizen of Delaware and Texas. *See* Paragraph 19, *infra*.

4.      In addition to the one Plaintiff from Texas, the remaining Plaintiffs are citizens of the following different states: Pennsylvania, Colorado, Hawaii, North Carolina, Ohio, Missouri, Georgia and Kentucky. *See id.* at ¶¶ 3-12.

5.      Plaintiffs' Petition is void of almost any factual allegations relating to each Plaintiff's claims: Examples of the vagueness of the Plaintiffs' allegations as to Bard include the following: (a) the Plaintiffs fail to identify which of the six[2] Bard IVC filters each Plaintiff allegedly received; (b) the Plaintiffs fail to identify what medical condition(s) led to their doctors' decision to place an IVC filter; (c) the Plaintiffs fail to allege when and where they received their Bard IVC filters; (d) the Plaintiffs fail to specify how their devices allegedly failed, if they failed at all; (e) the Plaintiffs fail to specify how long they had their IVC filters before they allegedly failed; (f) the Plaintiffs fail to specify the nature and extent of their alleged injuries; and (g) the Plaintiffs fail to specify what materials or information they or their doctors received from Bard that somehow support their failure to warn and negligent misrepresentation claims.

6.      The only fact the Petition provides is that each Plaintiff was implanted with one of Bard's "many iterations" of IVC filters, but Plaintiffs do not specify the model of the Bard IVC filter each Plaintiff received. *See* Petition at ¶ 30; *see also id.* at ¶90.

7.      Plaintiffs also vaguely allege that each Plaintiff suffered unspecified injuries as a result of his or her IVC filter, "including, but not limited to tilting, perforation, migration, fractures, and breakage." *Id.* at ¶ 90. While presumably each Plaintiff is aware of the filter-related complication he or she experienced, and the resulting injuries alleged to have been caused by the device, Plaintiffs elected to withhold that information in their pleading.

---

[2] Bard notes that it has distributed six different retrievable IVC filters, including the Recovery® Filter, G2® Filter, G2®X/G2 Express® Filter, Eclipse® Filter, Meridian® Filter, and Denali® Filter.

8.     In addition to the Bard Defendants, Plaintiffs also name McKesson Corp. as a Defendant. Yet, Plaintiffs' 36-page, 157 paragraph Petition only has two sentences devoted to their claims against McKesson Corp. *See* Plaintiff's Petition ¶ 16. Plaintiffs allege that "McKesson's business included designing, launching, marketing, establishing, and administering the Bard Reach [program], a marketing initiative designed to ensure patients implanted with Bard IVC filters are tracked for follow up care or retrieval of the filter." *Id.* Plaintiffs then allege that through the Reach program, "[o]n information and belief, Defendant McKesson marketed the Bard Filters with which the Plaintiffs were each implanted." *Id.*

9.     Notably, Plaintiffs fail to plead any facts showing that (1) after implant of a Bard IVC filter, each Plaintiff was actually enrolled in the Bard Reach program by his or her physician, and (2) that enrollment in the program ***after filter implant*** caused his or her filter-related injuries. *See id.* Outside of the two sentences quoted in the preceding paragraph, Plaintiffs' Petition does not contain any further factual allegations related to claims against McKesson Corp. or the Reach program. Nor does the Petition describe how McKesson Corp., specifically, could possibly be liable for any of Plaintiffs' legal claims.[3] In fact, neither the Reach program nor McKesson Corp. is mentioned outside of that one paragraph in Plaintiffs' Petition.

10.     After the two sentences related to Plaintiffs' claims against McKesson Corp. and the Reach program, Plaintiffs incorporate McKesson Corp. into the collective term "Defendants" along with Bard. Yet, in violation of the federal pleading standard, Plaintiffs fail to distinguish McKesson Corp.'s alleged wrongful acts (related to the Reach program that McKesson Corp.

---

[3] The causes of action in the complaint are as follows: Count One – Negligence, Count II – Strict Product Liability – Information Defect, Failure to Warn, Count III – Strict Product Liability – Design Defect, Count IV – Strict Product Liability – Manufacturing Defect, and Count V – Negligent Misrepresentation. *See* Petition ¶¶ 99-151. Plaintiffs also claim they are entitled to punitive damages. *Id.*

allegedly administered for Bard after some patients received their IVC filters) from those of the Bard Defendants (related to the manufacture, design, and distribution of IVC filters).[4] *See* Plaintiffs' Petition ¶¶ 99-156.

11.     McKesson Corp. is fraudulently joined to this action because there is no reasonable factual basis for this Court to predict that Plaintiffs can recover against McKesson Corp. on their allegations related to the Reach program. First, McKesson Corp. did not have any involvement in the Reach program—Plaintiffs named the wrong corporation. Instead, Bard contracted with McKesson Specialty Arizona Inc., a Delaware corporation with its principal place of business in Scottsdale, Arizona, to administer the Reach program. Second, Plaintiffs' Petition contains no facts showing that each Plaintiff was enrolled in the Reach program and, even if they were, how the Reach program (which was administered post-implant) had any causal relationship to each Plaintiff's filter-related injuries.

12.     After disregarding the citizenship of Defendant McKesson Corp. because it has been fraudulently joined, there is complete diversity of citizenship between the remaining Plaintiffs and Defendants C. R. Bard and BPV (the properly joined Defendants).

## NOTICE OF REMOVAL IS TIMELY

13.     On May 20, 2020 C. R. Bard and BPV were served with the Plaintiffs' Petition. This Notice of Removal is filed before the expiration of 30 days after the receipt by Bard, through service or otherwise, of a copy of the initial pleading in this matter setting forth Plaintiffs' claims for relief. *See* 28 U.S.C. § 1446(b). Accordingly, Bard's Notice of Removal is timely filed.

---

[4] Beyond mention of McKesson Corp. in the introductory paragraphs related to establishing the parties and the two sentences about Plaintiffs' claims against McKesson Corp. quoted, *supra*, the Petition reads like all the other IVC filter complaints that have been filed in state and federal courts across the country against Bard without McKesson Corp. as a co-defendant. *See* Petition ¶¶ 30-151.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this removed action under 28 U.S.C. §§ 1332 and 1441. Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action because complete diversity of citizenship exists between the properly joined Bard Defendants and the Plaintiffs, and the amount in controversy exceeds $75,000.00.

### A.     Venue is Proper

15.     The United States District Court for the Northern District of Texas includes the county in which the state court action is now pending (Dallas County), and, thus, pursuant to 28 U.S.C. § 124(a), venue is proper.

### B.     The Amount-in-Controversy Requirement is Satisfied

16.     Plaintiffs' Petition states that they are seeking monetary relief of over $1,000,000. *See* Petition at ¶ 24. In addition, Plaintiffs claim that Bard should be liable for punitive damages. *See id.* at ¶¶ 147-151. It is widely recognized that personal injury claims in pharmaceutical and medical device cases meet the $75,000.00 jurisdictional threshold. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"). Accordingly, without admitting liability or conceding that the Plaintiffs are, in fact, entitled to recover any damages, Bard states that it has a good-faith belief that the amount in controversy in this action exceeds $75,000.00, exclusive of interests and costs. *See White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (amount in controversy requirement is satisfied "if the plaintiff claims a sum greater than the jurisdictional requirement.") (citation omitted); *St. Paul Reinsurance Co. Ltd. v. Greenburg*, 134 F.3d 1250,

1253 n.13 (5th Cir. 1998) (the test is whether it is more likely than not that the amount of the claim will exceed the jurisdictional amount).

C. **Complete Diversity of Citizenship Exists Between All Properly Joined and Served Parties**

17.     At the time this action was filed, and at all times since, Defendant C. R. Bard was and is a New Jersey corporation with its principal place of business in the State of New Jersey. Therefore, C. R. Bard is a citizen of New Jersey. *See* 28 U.S.C. § 1332(c).

18.     At the time this action was filed, and at all times since, Defendant BPV was and is an Arizona corporation with its principal place of business in the State of Arizona. Therefore, BPV is a citizen of Arizona. *Id.*

19.     At the time this action was filed, and at all times since, upon information and belief, Defendant McKesson Corp. was and is a Delaware corporation with its principal place of business in the State of Texas. Therefore, McKesson Corp. is a citizen of Delaware and Texas. *Id.* But, for purposes of determining diversity of citizenship, McKesson Corp.'s citizenship should not be considered because it has been fraudulently joined to this action in an attempt to defeat federal diversity jurisdiction.

20.     The Petition alleges that Plaintiffs are residents of—and upon information and belief, Bard states that Plaintiffs are citizens of—the following states:

| | |
|---|---|
| Magdalena Macias: | Texas |
| Mary Stoke: | Pennsylvania |
| Kathlene Toft: | Colorado |
| Paula Orr: | Hawaii |
| George Watts: | North Carolina |
| Darrel Norris: | Ohio |
| Sandra Fry: | Missouri |
| Leonard Clark: | Georgia |
| Josh Smith: | Georgia |
| Carolyn Eddlemon: | Kentucky |

*See Petition* ¶¶ 3-12.

21.     Defendants C. R. Bard and BPV, the properly joined defendants, are diverse in citizenship from all Plaintiffs.

22.     Accordingly, there is complete diversity of citizenship among all properly joined Defendants and Plaintiffs.

### i.     Fifth Circuit Fraudulent Joinder Standard

23.     Fraudulent joinder, which is also known as improper joinder, is an exception to the rule requiring complete diversity of citizenship. *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (Fraudulent joinder "entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been properly joined.") The doctrine allows federal courts to defend against attempts to manipulate their jurisdiction, such as by joining nondiverse parties solely to deprive federal courts of diversity jurisdiction. *See id.* at 576. The Firth Circuit Court of Appeals "recognize[s] two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573. The second type of fraudulent joinder is at issue here.

24.     To establish that a party has been fraudulently joined, the removing party must demonstrate that "that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant." *Id.* "This possibility [of recovery], however, must be reasonable, not merely theoretical." *Malone v. Blue Cross & Blue Shield of Texas, Inc.*, 2019 WL 7987110, at *2 (N.D. Tex. Apr. 8, 2019) (citing *Great Plains Trust Co. v. Morgan Stanley Dean* 313 F.3d 305, 312 (5th Cir. 2002)).

25.     Defendants as well as plaintiffs can be fraudulently joined in a case. *See, e.g.*, *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 689 (S.D. Tex. 1997) ("The citizenship of a party-plaintiff may also be disregarded for purposes of determining whether diversity jurisdiction exists if the removing party can show that the nondiverse plaintiff was fraudulently joined.").

26.     To analyze whether there is a reasonable basis for recovery under state law, the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the [non-diverse] defendant." *See Smallwood*, 385 F.3d at 573. When performing this analysis, "federal courts must use the federal pleading standard, not the Texas "fair notice" pleading standard, in conducting a Rule 12(b)(6)-type analysis for improper joinder." *Malone*, 2019 WL 7987110 at *3 (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-02 (5th Cir. 2016)).

27.     To meet the federal pleading requirements of Rule 8, as enforced by Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

28.     The Court may also "pierce the pleadings" and consider summary judgment-type evidence as to "discrete facts that would determine the propriety of joinder." See *Malone*, 2019 WL 7987110, at *3 (citing *Smallwood*, 385 F.3d at 573); *Arana v. Allstate Texas Lloyds*, 2013 WL 2149589, at *2 (N.D. Tex. May 17, 2013).

29.     Furthermore, the Court looks to a plaintiff's pleading at the time of removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). The Court cannot consider a plaintiff's post-removal documents that "present new causes of action or theories not raised in the original state court complaint." *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999).

30.     When a party is fraudulently joined to a case, its citizenship must be disregarded for the purposes of determining diversity jurisdiction. *See, e.g.*, *Malone*, 2019 WL 7987110 at *3.

> ii.     **Defendant McKesson Corp. is Fraudulently Joined Because Plaintiffs' Petition Does Not Provide a Reasonable Basis Showing That Each Plaintiff Can Recover Against McKesson Corp.**

31.     Plaintiffs' Petition does not contain requisite factual support relating to their claims against McKesson Corp. to meet the federal pleading requirement and does not provide a reasonable basis for this Court to predict that Plaintiffs can recover against McKesson Corp. Accordingly, McKesson Corp. is fraudulently joined to this action.

32.     Plaintiffs' Petition contains only two sentences specifically addressing their legal claims against McKesson Corp. *See* Plaintiff's Petition ¶ 16. Plaintiffs allege that "McKesson's business included designing, launching, marketing, establishing, and administering the Bard Reach [program], a marketing initiative designed to ensure patients implanted with Bard IVC

filters are tracked for follow up care or retrieval of the filter." *Id.* Plaintiffs then claim, without any factual support whatsoever, that through the Reach program, "[o]n information and belief, Defendant McKesson marketed the Bard Filters with which the Plaintiffs were each implanted."[5] *Id.* McKesson Corp. is fraudulently joined for five reasons.

33. **_First_**, McKesson Corp. is fraudulently joined because McKesson Corp. did not have any involvement in the Reach program—Plaintiffs named the wrong corporation. Bard contracted with a different corporation, McKesson Specialty Arizona Inc., a Delaware corporation with its principal place of business in Scottsdale, Arizona, to administer the Reach program. *See* first page and Exhibit A to the February 1, 2011 Services Agreement for the Reach program between Bard Peripheral Vascular, Inc. and McKesson Patient Relationship Solutions, a division of McKesson Specialty Arizona, Inc., attached as **Exhibit A**; Georgia Secretary of State Business Information for McKesson Specialty Arizona, Inc., attached as **Exhibit B**. Because McKesson Corp. did not have any involvement with Bard's Reach program, there is no actionable claim against McKesson Corp., and it is therefore fraudulently joined to this action. *See e.g.*, *Galvan v. Bonner*, 2005 WL 1774102, at *2 (S.D. Tex. July 25, 2005) (noting that dismissal is proper where plaintiff sued the wrong defendant).

34. **_Second_**, even if McKesson Corp. did contract with Bard to administer the Reach program (which it did not) and could be subject to liability for Plaintiffs' claims (which it cannot),

---

[5] In Paragraph 16 of the Petition, Plaintiffs also allege that McKesson Corp. is generally in the business of distributing "medical supplies." But, Plaintiffs do not provide any facts supporting the notion that McKesson Corp. distributed Bard IVC filters and, more pertinently, the Bard IVC filters that were implanted in each Plaintiff. Facts showing that McKesson Corp. distributed the IVC filters implanted in each Plaintiff are necessary to state a plausible distribution claim and prevent a finding of fraudulent joinder. *See, e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2020 WL 598043, at *2 (E.D. La. Feb. 7, 2020). Yet, there is no evidence that McKesson Corp. distributed the IVC filters implanted in each Plaintiff because there is no distribution agreement for IVC filters between McKesson Corp. and Bard.

McKesson Corp. is still fraudulently joined because Plaintiffs' Petition does not provide any of the necessary factual support to show this Court there is a reasonable basis to predict that each Plaintiff could recover against McKesson Corp.

35.     After the two sentences specifically addressing Plaintiffs' claim against McKesson Corp. in Paragraph 16 of the Petition, the pleading incorporates McKesson Corp. into the term "Defendants," along with the Bard Defendants. But, starting with the General Factual Allegations Section (Paragraph 30) and moving all the way through Plaintiffs' legal claims and claims for damages ending at Paragraph 156, all of the factual and legal allegations actually relate solely to Bard's design, manufacture, and distribution of IVC filters and not to McKesson Corp.'s alleged conduct related to the Reach program. In fact, no allegations in the Petition outlining Plaintiffs' substantive legal claims (*see* Petition ¶¶ 99-151) even reference the Reach program or McKesson Corp., let alone provide any factual support showing how McKesson Corp.'s alleged "marketing" program to, at the physicians' request, call patients and remind them to make an appointment with their doctor related to potential filter retrieval was deficient or breached any duty owed to the Plaintiffs owed under Texas or any other state's law.

36.     Nor do Plaintiffs present any information showing how it is even possible that these phone call reminders ***made after patients' filters were implanted*** constitutes "marketing" of Bard's filters or how these reminder phone calls could have caused their IVC filter-related injuries. In short, the Petition is ***entirely void*** of legal allegations and factual support showing how or why McKesson Corp. is liable.

37.     As other courts have found in similar situations, Plaintiffs' allegations targeted at "Defendants" generally—rather than McKesson Corp. in particular—are insufficient to state a claim against McKesson Corp. and also demonstrate that McKesson Corp. is fraudulently joined

in this case.[6] *See, e.g.*, *Beavers v. DePuy Orthopaedics, Inc.*, 2012 WL 1945603 (N.D. Ohio May 30, 2012) (finding distributor fraudulently joined in ASR-hip case where plaintiffs' 89-paragraph complaint only mentioned the distributor twice, with the remainder of the paragraphs "fail[ing] to distinguish between the DePuy Defendants' allegedly wrongful acts and those of [the distributor]"); *Shah v. Wyeth Pharms., Inc.*, 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("allegations against 'defendants' collectively are insufficient to warrant remand, especially when plaintiffs fail to allege any 'particular or specific activity'" on the part of each of the non-diverse defendants) (*citing Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000)).

38.    The Petition does not contain even the most basic, necessary facts relating to Plaintiffs' claim against McKesson Corp. that would allow the Court to reasonably infer that they can recover against it. For example, ***the Petition contains no facts to support that each Plaintiff was ever enrolled in the Reach program***. This deficiency alone makes Plaintiffs' claims against McKesson Corp. fall well below the federal pleading standard. Plaintiffs' conclusory statement that "[o]n information and belief, Defendant McKesson marketed the Bard Filters with which the Plaintiffs were each implanted" is exactly the type of naked assertion, devoid of factual enhancement, that the Supreme Court prohibited in *Iqbal* and *Twombly*. *See* Petition at ¶ 16.

39.    Furthermore, the Petition only states that each Plaintiff was implanted with one of Bard's "many iterations" of IVC filters, but it does not specify the name or model of the IVC

---

[6] For example, in Plaintiffs' first cause of action for negligence, they allege that "Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed, and sold the Bard Filter implanted in Plaintiffs." *See* Plaintiff's Petition ¶ 101. This type of pleading, where plaintiffs do not distinguish between the activities of each defendant, is not sufficient to state claim against McKesson Corp. or factually establish that McKesson Corp. did any of these things. It is also illustrative that in the preceding paragraph, Plaintiffs specifically state that the Bard defendants (and not McKesson Corp.) "were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Bard Filter." *Id.* at ¶ 100.

filter each Plaintiff received. *See* Petition at ¶ 30. Bard has distributed six different retrievable IVC filters, including, in chronological order, the Recovery Filter, G2 Filter, G2X/G2 Express Filter, Eclipse Filter, Meridian Filter, and Denali Filter.

40.     Identification of the Bard IVC filter implanted in each Plaintiff is critical for the Court to reasonably predict whether a Plaintiff could recover against McKesson Corp. because the Reach program was launched in coordination with the launch of Bard's Meridian filter and was only set up to track patients who had one the last two models of Bard's IVC filters (Meridian and Denali) implanted. *See* August 30, 2016 deposition of Kimberly Romney as Bard's 30(b)(6) corporate witness related to the Reach program ("Bard 30(b)(6) Reach Deposition"), 93:21-94:13, relevant portions attached as **Exhibit C**.

41.     Additionally, patients implanted with a Meridian and Denali filter were not automatically enrolled in the Reach program. *See id* at 91:7-93:10. Physicians who implanted IVC filters (or their medical practice group) had to affirmatively enroll their patients into the Reach program. *Id.* So, even if Plaintiffs' Petition alleged facts showing that a Plaintiff was implanted with a Meridian or Denali Filter (which it does not), only a fraction of those patients were actually enrolled in the Reach program by their physician.

42.     Because the majority of patients implanted with Bard's IVC filters had no involvement with the Reach program, most because it did not exist yet, the Petition leaves the Court to speculate as to whether any of the Plaintiffs were actually enrolled in the Reach program.

43.     Accordingly, there is no reasonable basis for this Court to predict that McKesson Corp. is liable to Plaintiffs because of its administration of the Reach program because each Plaintiff failed to plead any concrete facts showing the model of Bard IVC filter they had implanted and, even if it was a model of filter that was eligible for the Reach program, that their

physician actually enrolled them in the Reach program.[7] In short, McKesson Corp. is fraudulently joined because there are no facts linking each Plaintiff to the Reach program. *See*, *e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2020 WL 598043, at \*2 (E.D. La. Feb. 7, 2020) (ruling McKesson was fraudulently joined in a product liability case against a drug manufacturer when the plaintiffs presented no facts to show that McKesson distributed the drug that was ingested by each plaintiff.).

44.      ***Third***, there is also no basis for the Court to reasonably predict that Plaintiffs could recover against McKesson Corp. because the actual facts show that the Reach program did not consist of any activities that could subject a company to liability under Texas or any other state's law. Plaintiffs' Petition alleges that McKesson Corp. "marketed" Bard IVC filters through the Reach program. But, utilizing even the most expansive definition of the word, the facts show that the Reach program had nothing to do with marketing Bard's IVC filters. Additionally, as a matter of logic, McKesson Corp. could not have marketed a Bard IVC filter to any of the Plaintiffs or their physicians because the Reach program began after a patient was already implanted with a Bard filter. **Exhibit C**, Bard 30(b)(6) Reach Deposition at 30:2-31:7. Hence, there was nothing to market or sell.

45.      Bard's IVC filters are retrievable, which means that physicians have an option to retrieve the filters if they determine that it is no longer medically necessary. The Reach program, which was created by Bard and administered by McKesson Specialty Arizona, Inc., is simply a phone call reminder program where a McKesson Specialty Arizona, Inc. representative would,

---

[7] Bard notes that each Plaintiff would have personal knowledge of whether he or she was enrolled in the Reach program. If a Plaintiff was enrolled, he or she would have received phone calls and/or voice messages from a McKesson Specialty Arizona, Inc. representative after his or her Bard IVC filter was implanted related to physician follow-up for potential retrieval of the filter. *See* **Exhibit C**, Bard 30(b)(6) Reach Deposition at 91:7-93:10, 105:4-20.

at the doctors' request, call patients and remind them to schedule a follow-up appointment with their physician related to potential removal of the filter. *See Id.* at 30:2-31:7, 91:7-93:10, 105:4-20, 112:6-18, 291:1-292:13. After implant of a Meridian or Denali filter, a physician could elect to enroll that patient into the Reach program. *Id.* The physician would then provide two dates: (1) The date when the patient will be home after filter implant, and (2) the date when the physician wanted to see the patient for follow-up related to potential filter retrieval. *Id.* Around the time when the patient was home after filter implant, a McKesson Specialty Arizona, Inc. representative would call the patient to remind him or her that the implanting physician wants to see the patient for a follow-up appointment related to potential filter retrieval on the date pre-specified by the physician. *Id.* The McKesson Specialty Arizona, Inc. employee would then ask the patient if they would like a future phone call closer to the date his or her physician specified for a follow-up appointment, and if the patient consents, McKesson Specialty Arizona, Inc. would call the patient a second time to remind them to schedule a consultation or attend the appointment they already made. *Id.* This is the entirety of the Reach program. Because McKesson Corp. did not market, sell, distribute, or promote Bard's IVC filters, there is no possibility that Plaintiffs can recover under Texas or any other state's law on any claim related to their allegation that McKesson Corp. "marketed" Bard's IVC filters.

46.     *__Fourth__*, even if McKesson Corp. did market Bard's IVC filters (which it did not), and even if there was a showing that each of the Plaintiffs were enrolled with the Reach program (which there is not), Plaintiffs' Petition would still fails to state a claim or provide any reasonable

basis for the Court to predict that Plaintiffs could recover against McKesson Corp. under Texas[8] law.

47.     Because this case is grounded in product liability, the Texas Products Liability Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 82.001-82.008 governs Plaintiffs' claims against McKesson Corp. regarding the Reach program. *See Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001) ("[A] 'products liability action' includes not only products liability claims but also other theories of liability properly joined thereto, such as the allegation of negligence."); *Moses v. Zimmer Holdings, Inc.*, 2007 WL 3036096, at *4 (S.D. Tex. June 29, 2007). This Act defines a "product liability action" as "any action against a **manufacturer** or **seller** for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." Tex. Civ. Prac. & Rem.Code. Ann. § 82.001(2) (emphasis added). Because there is no evidence that McKesson Corp. was a "manufacturer" or "seller," as those terms are defined in § 82.001(2), Plaintiffs cannot bring a product liability action against McKesson Corp.

48.     Even if Plaintiffs could show that McKesson Corp. was a "seller" (which they cannot), McKesson Corp. would be considered an "innocent non-manufacturing seller" that is immune from liability because Plaintiffs have presented no evidence that McKesson Corp.

---

[8] Plaintiffs allege that McKesson Corp.'s national corporate headquarters and principal place of business is located in Texas and that McKesson Corp. committed its alleged tort in Texas, presumably related to the Reach program. *See* Petition ¶¶ 23, 26-27. Accordingly, Texas has the most significant relationship to Plaintiffs' claims against McKesson Corp.

engaged in any of the conduct that could subject it to liability under Tex. Civ. Prac. & Rem.Code. Ann. § 82.003.

49.     Assuming for the sake of argument that Plaintiffs could overcome those statutory hurdles, which they cannot, Plaintiffs still have no reasonable likelihood of success on their claim against McKesson Corp. Because Bard's IVC filters are prescription medical devices inserted by physicians, Texas applies the learned intermediary doctrine and treats claims of negligent or defective marketing as failure to warn claims. *See, e.g.*, *Gonzalez v. Bayer Healthcare Pharm.*, Inc., 930 F. Supp. 2d 808, 820 (S.D. Tex. 2013) (treating plaintiff's marketing defect and negligence claims for a prescription medical device as failure to warn claims and applying the learned intermediary doctrine). The Reach program's involvement with Bard's filters began ***after*** the filters were sold to the physician group or hospital. Because "Texas courts generally do not recognize any post-sale duty to warn of product hazards arising after the sale," McKesson Corp. would not be liable for any alleged failure to warn each Plaintiff's learned intermediary. *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 430 (5th Cir. 2001).

50.     Additionally, "[i]n a failure to warn case, the plaintiff must show that the warning was defective and that this failure to warn was the producing cause of the plaintiff's injury." *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 703 (E.D. Tex. 1997). Here, Plaintiffs have not alleged facts showing that McKesson Corp. provided any warnings or instructions to each Plaintiff's physician, that such warnings or instructions were inadequate, or that any allegedly inadequate warnings or instructions to each Plaintiff' s physician related to the physicians' decision to implant a Bard IVC filter and was the proximate cause of injury. Accordingly, because of this deficient pleading, Plaintiffs cannot show that they have a

reasonable likelihood of recovery against McKesson Corp.[9] *See, e.g.*, *Gonzalez*, 930 F. Supp. 2d at 821 (granting defendant's motion to dismiss for failure to state a claim as to all of the plaintiff's claims, including marketing defect); *Malone*, 2019 WL 7987110, at *7 (defendants fraudulently joined because plaintiffs' pleading did not show that they could succeed on any claims against them under Texas law).

51. ***Fifth***, and finally, McKesson Corp. is fraudulently joined because of the inconsistency in pleading within Plaintiffs' Petition. Federal Courts have found that a finding of fraudulent joinder is appropriate where the facts pleaded "are impossible or fatally inconsistent." *See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig*., 624 F. Supp. 2d 396, 418 (E.D. Pa. 2009); *see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 2002 WL 34418423, at *3 (W.D. Wash. Nov. 27, 2002) (allegations that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged defects"). Here, Plaintiffs

---

[9] Even if the Court did not apply the learned intermediary doctrine and did not convert Plaintiffs' marketing claims against McKesson Corp. into a failure to warn claim, McKesson Corp. is still fraudulently joined because Plaintiffs pled no facts to support claims for negligent or defective marketing under Texas law. A negligent marketing claim has four elements: "1) a duty by appellant to act according to an applicable standard of care; 2) a breach of the applicable standard of care; 3) an injury; and 4) a causal connection between the breach of care and the injury." *Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App. 2011). A defective marketing claim has five elements: "(1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist, (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed, (3) the product must possess a marketing defect, (4) the absence of the warning or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct must constitute a causative nexus in the product user's injury." *Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W.3d 513, 516 (Tex. App. – Fort Worth 2007, no pet.). In addition to the essential element of causation, Plaintiffs' Petition fails to show establish all of these elements as they relate to a marketing claim against McKesson Corp. related to the Reach program.

allege that the Bard Defendants fraudulently concealed "the true character, quality, and nature of the [IVC Filters] that [were] implanted in Plaintiffs." *See* Plaintiff's Petition ¶ 94. However, if the Bard defendants concealed this information, McKesson Corp. could not have known it or disclosed it during its alleged "marketing" of Bard's IVC filters.

52.     Because McKesson Corp. is fraudulently joined to this action, its citizenship must be disregarded for the purposes of determining subject matter diversity jurisdiction. *See Malone,* 2019 WL 7987110 at *3.

## OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

53.     All properly joined and served Defendants join in this removal. 28 U.S.C. § 1446(b)(2)(A). Because Defendant McKesson Corp. has been fraudulently joined, its consent is not needed for removal to federal court because the application of "this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

54.     Written notice of the filing of this Notice of Removal is being served on all parties through their counsel of record. A copy of this Notice of Removal will be promptly filed with the Clerk of the 193rd Judicial District Court of Dallas County, Texas.

55.     Copies of all process, pleadings and orders, as well as the docket sheet and index of all pleadings relating to this case and previously filed with the 193rd District Court of Dallas County, Texas are attached hereto as Exhibits D-1 – D-11 for the Court's reference.

WHEREFORE Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. respectfully give notice that the above-captioned action currently pending in the 193rd Judicial District Court of Dallas County, Texas is removed to the United States District Court for the Northern District of

Texas, Dallas Division. Should any issue arise as to the propriety of this removal, Defendants

C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. respectfully requests the opportunity to provide

briefing and oral argument on the same.

Respectfully submitted,

*/s/Melissa Dorman Matthews*
Melissa Dorman Matthews
Texas Bar No. 00790603
mmatthews@hartlinebarger.com
Jordan E. Jarreau
Texas Bar No. 24110049
jjarreau@hartlinebarger.com
**HARTLINE BARGER LLP**
8750 N. Central Expy., Suite 1600
Dallas, Texas 75231
Telephone: (214) 369-2100
Facsimile: (214) 267-4271

**ATTORNEYS FOR DEFENDANTS**
**C. R. BARD, INC. AND**
**BARD PERIPHERAL VASCULAR, INC.**

## CERTIFICATE OF SERVICE

     I hereby certify that on the 9th day of June, 2020, a true and correct copy of the foregoing document was served upon all known counsel of record via ECF in accordance with the Federal Rules of Civil Procedure.

     */s/ Melissa Dorman Matthews*
     Melissa Dorman Matthews